# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| TCF NATIONAL BANK, | Civil No. 11-2717 (JRT/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MARKET INTELLIGENCE, INC.; FIDELITY NATIONAL INFORMATION SERVICES, INC.; LSI APPRAISAL, LLC; and LENDER PROCESSING SERVICES, INC., | |
| Defendants. | |

Brian Melendez and Emily E. Chow, **FAEGRE BAKER DANIELS LLP**, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402-3901, for plaintiff.

David T. Case and Bruce H. Nielson, **K&L GATES LLP**, 1601 K Street NW, Washington, DC 20006-1600; Donald G. Heeman, **FELHABER LARSON FENLON & VOGT, PA**, 220 South 6th Street, Suite 2200, Minneapolis, MN 55402-4504, for defendants.

This action arises out of defendant Market Intelligence, Inc.'s ("Market") performance of certain real estate evaluations for plaintiff TCF National Bank ("TCF") pursuant to a contract between the parties. The other defendants are allegedly potential successors in liability to Market. TCF claims fraudulent inducement, fraud, and business and statutory torts. Defendants have moved to dismiss for failure to state a claim. For the reasons set forth below, the Court will grant the motion as to the consumer fraud and

deceptive trade practices, interference with business relations, gross negligence, and breach of the covenant of good faith claims.  It will deny the motion in all other respects.

## BACKGROUND

In June 2002, the parties entered into a contract (the "Agreement") concerning "evaluations and appraisals of residential real properties for the purpose of determining estimated market value."  (Compl. ¶ 1, Sept. 21, 2011, Docket No. 1; Agreement to Purchase Services ("Agmt") § 1, Nov. 18, 2011, Docket No. 13.)  The "evaluation services" Market was to provide included "Field Asset Verifications" or "FAVs."  TCF claims that Market's FAVs negligently inflated property values and induced TCF to enter into loans it would not have entered into but for the inflated values.  (Compl. ¶ 1.)

"The FAV is a residential real property evaluation" comprised of (1) data, for example, a previous appraisal or a prior sales price, and (2) a "drive-by" exterior inspection of the property by a licensed real estate agent.  (Agmt. § 4(A)(3).)  The agent "may be an appraiser but is usually a real estate agent."  (*Id.*)  The FAV "is not an appraisal."  (*Id.*)[1]  In short, the Agreement states that FAVs were estimates or opinions of

---

[1] The full text of the relevant provision reads:

The FAV is a residential real property evaluation derived from a process that combines an external data source value (previous appraisal, automated estimate, prior sales price, etc.) with a 'drive-by' exterior inspection of the subject property by an agent licensed in residential real estate in the state in which the subject property is located.  The agent, who may be an appraiser but is usually a real estate agent, also provides at least one comparable sale, and other local market data.  This product is intended primarily for use in consumer/home equity lending and the second mortgage market.  The Field Asset Verification is not an

(Footnote continued on next page.)

value – not appraisals – and were not required to be performed by appraisers. The agreement also contained a merger clause, and a choice of law clause selecting Minnesota law. (Agmt. §§ 26, 22.)

From 2002 through 2005, Market performed FAVs in connection with 2,989 residential mortgage loans that TCF originated. (Compl. ¶ 19.) The loans totaled approximately $300 million. (*Id.*) On August 29, 2002, TCF executive vice-president Tim Meyer wrote to Market's Ted Mara inquiring about a "significant difference" between one particular FAV value and the appraisal value. (*Id.* ¶ 55.) Market responded "by assuring TCF that [it] was not engaged in practices that would produce" a significant difference in other cases. (*Id.* ¶ 56.)

Pursuant to the Agreement's terms, TCF terminated the Agreement effective June 11, 2005. (*Id.* ¶ 20.) TCF later discovered that many FAVs had "grossly overestimated the value of properties whose mortgages were in default or foreclosure." (*Id.* ¶ 21.) TCF alleges that the inaccurate estimates in the FAVs resulted from gross negligence, malfeasance, or willful misconduct, including ignoring comparable sales data in the relevant market (even in the same building), ignoring a property's tax-assessed

---

(Footnote continued.)

    appraisal and does not include either (a) a physical inspection of the interior of the subject property, or (b) photographs of the interior or exterior of the property, although photographs will be provided on request as will additional market data such as active listings."

(Agmt. § 4(A)(3).)

value, failing to consider issues about the property's condition easily visible from the street, and blindly relying on property owners' estimates. (*Id.* ¶¶ 23-24.)

TCF claims that these inflated values led it to enter loans it would not have otherwise entered, and that it suffered financial losses when it foreclosed on, or charged off, mortgages for which Market had performed FAVs. (Comp. ¶¶ 25-27.) TCF's complaint alleges eight causes of action: (1) fraudulent inducement, (2) negligent appraisal, (3) gross negligence, (4) fraud, (5) consumer fraud, (6) deceptive trade practices, (7) interference with business relations, and (8) breach of covenant of good faith & fair dealing. (Compl. ¶¶ 33-93.)

## ANALYSIS

## I.   STANDARD OF REVIEW

Although a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must plead facts that render a defendant's liability plausible – not merely possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In reviewing a complaint on a motion to dismiss the Court takes as true all allegations in the complaint, which it construes in the light most favorable to the nonmoving party. *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010). It must not, however, give effect to conclusory allegations of

law.  *Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 521 (8th Cir. 2007).  Finally, the

Court may grant a motion to dismiss on a dispositive issue of law.  *Neitzke v. Williams*,

490 U.S. 319, 326 (1989).

## II.    MARKET'S MOTION TO DISMISS

Market moves to dismiss the complaint on the grounds that (1) TCF's claims are

barred by Minnesota's six-year statute of limitations, (2) TCF's tort claims are

additionally barred by the independent duty rule, (3) TCF's tort claims are insufficiently

pled, (4) TCF's statutory claims (negligent appraisal, consumer fraud, and deceptive trade

practices) fail to state a claim, and (5) no cause of action exists for breach of the covenant

of good faith and fair dealing.  Market also argues that the other defendants must be

dismissed because TCF has failed to plead the elements of successor liability.  The Court

will first address Market's statute of limitations and independent duty rule arguments –

potentially applicable to all claims – before assessing in greater depth each of TCF's

claims in turn.

### A.    Statute of Limitations

A six-year statute of limitations governs fraud and certain tort claims in

Minnesota.  Minn. Stat. § 541.05, subd. 1; *see also Hope v. Klabal*, 457 F.3d 784, 790

(8th Cir. 2006); *Christian v. Birch*, 763 N.W.2d 50, 56 (Minn. Ct. App. 2009).  The six-

year period also applies to contract actions and actions based upon a liability created by

statute.  Minn. Stat. § 541.05, subd. 1; *Drobnak v. Andersen Corp.*, Civ. No. 07-2249,

2008 WL 80632, at *4 (D. Minn. Jan. 8, 2008).  The limitations period begins to run

"when the cause of action accrues, that is, when the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Antone v. Mirviss*, 720 N.W.2d 331, 335 (Minn. 2006).   The accrual spectrum ranges from the traditional "occurrence" rule (statute begins to run with the performance of the wrongful act) to the "discovery" rule (statute begins to run only when the plaintiff knows or should know of the injury).   *See id.* at 335-36.   Minnesota has adopted the middle-ground "damage" rule, under which the limitations period begins to run when some damage has occurred.   *Id.*   Courts are to interpret "damage" broadly, meaning "any compensable damage, whether specifically identified in the complaint or not."   *Id.* at 336.[2]

TCF terminated the agreement in June 2005.   It filed suit on September 21, 2011. Market argues that because TCF's claims accrued no later than the June 2005 termination of the agreement, and TCF filed suit six years and three months after that time, the statute of limitations bars TCF's claims.   Moreover, Market argues that the August 2002 letter noting a "significant difference" in valuations between an FAV and a full appraisal demonstrates that, by 2002, TCF was capable of assessing whether Market's services were unsatisfactory.   Market relies on *Hydra-Mac, Inc. v. Onan Corp.* in urging dismissal on the statute of limitations ground.   450 N.W.2d 913, 919 (Minn. 1990).   In that

---

[2] Fraud claims, by contrast, accrue when the aggrieved party discovers "the facts constituting the fraud." Minn. Stat. § 541.05, subd. 1(6).  That is, fraud claims are governed by the discovery rule.  Minnesota courts deem facts to have been discovered "when with reasonable diligence, they could and ought to have been discovered."  *Hope v. Klabal*, 457 F.3d 784, 793 (8th Cir. 2006) (internal quotation marks omitted).

decision, the Minnesota Supreme Court stated that when a party has information that it might have a cause of action, "it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim." *Id.* (internal quotation marks omitted).  That is, Market argues, because TCF was aware of the basis for its claims as early as 2002, and certainly before TCF terminated the agreement in 2005, the statute of limitations operates to bar TCF's claims.

The Court will not dismiss TCF's claims on the statute of limitations ground because it is not clear that compensable damage occurred more than six years before the filing of the complaint.  *See Antone*, 720 N.W.2d at 335-36.  True, all FAVs were performed before 2005, and TCF was aware as early as 2002 that at least one FAV differed from the appraised value.  But it does not follow that compensable damage necessarily occurred at that point.  Rather, the Complaint alleged that "**[a]fter TCF terminated the Agreement**, TCF discovered that many [FAVs] performed by [Market] had grossly overestimated the value of properties whose mortgages were in default or foreclosure."  (Compl. ¶ 21 (emphasis added).)  TCF suffered financial loss when it "foreclosed on, or charged off, mortgages as to which [Market] had performed an [FAV] that resulted in an inflated value.  (*See* Compl. ¶¶ 31, 27.)  While the Complaint does not specify precisely when these foreclosures and charge-offs took place,[3] it does state that "[a]s of August 2008, TCF calculated that at least 32 mortgages had gone into default."

---

[3] TCF's briefing notes that the foreclosures and charge-offs **began** around 2008.

(Compl. ¶ 28.)  In light of these allegations, it is not clear that the action accrued before 2008.

Moreover, even if TCF could have discovered problems with the FAVs with further investigation, a "plaintiff's due diligence in the statute of limitations context is ordinarily a question of fact."  *See Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 235 (8th Cir. 1996).  While the Court may properly resolve TCF's due diligence as a matter of law if "the evidence leaves no room for reasonable minds to differ," *id.*, here Market responded to TCF's inquiry about the "significant difference" in value between one particular FAV and an appraisal by assuring TCF about the integrity of Market's evaluation processes (Compl. ¶ 56).  At the very least, reasonable minds could differ as to whether TCF's reliance on Market's assurances was reasonable under the circumstances.  For these reasons, the Court declines to conclude at this point in the litigation that the statute of limitations has run.

### B.      The Independent Duty Rule and TCF's Tort Claims (Counts I-IV, VII)

Market argues that the independent duty rule bars TCF's tort claims.  The independent duty rule provides that a plaintiff cannot recover damages in tort for an alleged breach of contract, except in "exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort."  *Wild v. Rarig*, 234 N.W.2d 775, 789 (Minn. 1975); *see also Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 994 (D. Minn. 2006).  However, the mere existence of a governing commercial contract does not preempt or eliminate the possibility of a tort claim.  *See AKA Distrib.*

*Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998). "A fraud claim independent of the contract is actionable, but it must be based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement." *Id.* "[A] tort is independent from a breach of contract (and a separate cause of action can thus be brought) if a relationship would exist which would give rise to the legal duty without enforcement of the contract promise itself." *Constr. Sys., Inc. v. Gen. Cas. Co. of Wis.*, No. 09-3697, 2011 WL 3625066, at *9 (D. Minn. Aug. 17, 2011) (internal quotation marks and citation omitted).

Market's central argument is that TCF's tort claims (fraud, negligence, tortious interference with business relations, fraudulent inducement) are simply breach of contract claims masquerading as tort claims in an attempt to evade the six-year statute of limitations. (The contract could only have been breached before it was terminated in June 2005 – and, thus, the statute of limitations would have run before this case was filed.)

The Court finds that it is premature to hold in blanket fashion that all TCF's tort claims are, in reality, contract claims – although for the reasons described in Part II.C.3, *infra*, the Court will dismiss the gross negligence claim on this ground. As a preliminary matter, TCF has not alleged breach of contract. While true that TCF's tort claims in some way relate to the FAVs contemplated in the Agreement, no rule of law states that the existence of a commercial contract precludes all other potential claims between the contracting parties. *See AKA Dist. Co.*, 137 F.3d at 1086 ("[T]he presence of a governing

commercial contract neither preempts nor eliminates the need for all fraud claims to which the parties' dealings may give rise.")

Dismissal of all claims at this stage is inappropriate because TCF alleges that Market breached statutory and other duties that existed apart from the contract. For example, the negligent appraisal, consumer fraud, and deceptive trade practices claims are based on alleged statutory violations. The fraud and fraudulent inducement[4] claims are predicated on Market's post-contract assurances about its practices and pre-contract statements, respectively. None of these tort claims must necessarily be understood as

---

[4] Market relies on *Marvin Lumber & Cedar Co. v. PPG Industries, Inc.*, 223 F.3d 873 (8th Cir. 2000) in arguing that the independent duty rule bars TCF's fraudulent inducement claim. *Marvin Lumber* applied Minnesota's economic loss doctrine, which "precludes a commercial purchaser of a product from recovering economic damages through at least some tort actions against the manufacturer or seller of the product." *Id.* at 882. The economic loss doctrine is analogous to the independent duty rule in that it seeks to prevent tort law from swallowing contract law; in general terms, the doctrine precludes recovery in tort for purely economic damages. *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, No. 05-2310, 2007 WL 4191717, at *3 n.6 (D. Minn. Nov. 21, 2007). A widely recognized exception to the rule is that "fraud in the inducement, necessarily prior to the contract, is independent of the contract and therefore not barred by the economic loss doctrine." *Marvin Lumber*, 223 F.3d at 885; *see also AKA Dist. Co.*, 137 F.3d at 1086. *Marvin Lumber* also highlighted a limitation on this principle: the economic loss doctrine **does** bar fraud claims where the alleged misrepresentation concerns the quality or character of the goods because these representations may become express warranties under the UCC, and are thus redundant of the contract claim. 223 F.3d at 885 (finding fraud claims barred on this ground).

The case does not help Market, however, because the UCC does not apply here. *Cf. In re Grain Land Coop*, 978 F. Supp. 1267, 1279-80 (D. Minn. 1997) (holding that the economic loss doctrine bars tort claims where the contract allegedly breached was governed by the UCC, in contrast to cases involving breach of contract claims not governed by the UCC permissibly brought with tort claims). It appears that no authority has extended *Marvin Lumber* beyond the sale of goods context, and the Court declines to do so here. Rather, like many claims of fraudulent inducement, TCF's claim arose outside of the contract. *See AKA Distr. Co.*, 137 F.3d at 1086; *McDonald v. Johnson & Johnson*, 776 F.2d 767, 770-71 (8th Cir. 1985) ("Plaintiffs' fraud claim arose when Johnson & Johnson first made the promises, without intending to honor them, that allegedly induced plaintiffs to enter into [the agreement]; plaintiffs' breach of contract claim arose only after Johnson & Johnson later failed to fulfill those promises.")

alleging a breach of the contract; TCF could have brought them even if no contract existed.  *See, e.g.*, *Hanks v. Hubbard Broad., Inc.*, 493 N.W.2d 302, 308 (Minn. Ct. App. 1992) (finding no bar to a tort claim because plaintiff employee could have pursued it even in the absence of the allegedly breached employment contract); *cf. Constr. Sys. Inc.*, 2011 WL 3625066, at *9-10 (dismissing tortious interference claims because "[a]ll of the wrongful conduct [plaintiff] identifies stems from [defendant's] **contractual** duties"); *Best Buy Stores, LP v. Developers Diversified Realty Corp.*, No. 05-2310, 2007 WL 4191717, at *5 (D. Minn. Nov. 21, 2007) (dismissing fraud claim because the only damages alleged flowed from the alleged breach of contract); *Cherne Contracting Corp. v. Wausau Ins. Cos.*, 572 N.W.2d 339, 343-44 (Minn. Ct. App. 1997) (dismissing tort claim as arising from the contract);.  In short, Market cannot leverage the independent duty rule to preclude TCF's tort claims, and the Court will not dismiss in blanket fashion all such claims.

### C.    TCF's Claims

Market moves to dismiss each of TCF's claims for failure to state a claim upon which relief can be granted.  The Court will address each cause of action in turn.

### 1.    **Fraudulent Inducement** (Count I)

To succeed on a claim of fraudulent inducement, TCF must show that Market – with intent to induce reliance – made a false representation of material fact susceptible of knowledge, with knowledge of its falsity, that the representation did in fact induce reliance, and that TCF suffered damages as a result.  *See Valspar Refinish, Inc., v.*

*Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009). Reliance on the representation must also be reasonable. *Moua v. Jani-King of Minn., Inc.*, 810 F. Supp. 2d 882, 895 (D. Minn. 2011). "It is unreasonable as a matter of law to rely on a representation that is completely contradicted by a written agreement." *Id.* In addition to its independent duty argument, Market also argues that this claim fails because TCF's reliance on the allegedly fraudulent representations was unreasonable as a matter of law since the representations are contrary to the written contract.

TCF's complaint alleges three pre-contract misrepresentations: first, that Market "combines the speed and data of today's information providers with the street smarts of veteran real estate appraisers"; second, that "[a]ll evaluations and appraisals are reviewed for quality as part of the [Market] process. Field work is reviewed and signed off by a qualified real estate appraiser"; and third, evaluations "must be written, contain enough information to support an estimate of value, . . . and be conducted by individuals with relevant training or experience and knowledge." (Compl. ¶ 34). Market argues that reliance on these statements is unreasonable as a matter of law because they differ from the terms of the contract. Specifically, the contract provides that the person performing the FAVs "may be an appraiser, but is usually a real estate agent," and is silent as to whether the evaluations must be signed off by an appraiser or conducted by "individuals with relevant training and knowledge."

The Court finds that the contract does not "squarely contradict" the allegedly fraudulent pre-contract statements. *See Commercial Prop. Invs., Inc. v. Quality Inns Int'l Inc.*, 938 F.2d 870, 875-76 (8th Cir. 1991). This is not a case in which, for example, the

written agreement specifies that an FAV is to cost $100, and TCF suggests by way of its fraudulent inducement claim – and contrary to the merger clause – that Market said an FAV would cost only $90. *Winthrop Res. Corp. v. Sabert Corp.*, 567 F. Supp. 2d 1084, 1094-95 (D. Minn. 2008) (offering the analogy).  The first statement about **providing** the "street smarts" of "veteran real estate appraisers" does not plainly conflict with the contract's provision that an FAV may or may not be **performed** by an appraiser. Moreover, the Court declines to infer from the absence of certain statements in the contract a contradiction between it and the pre-contract representations regarding the quality review process and the training of individuals conducting the evaluations.  Absent plain or complete contradiction, the Court concludes that the reasonableness of TCF's reliance is a question of fact.  *See Commercial Prop. Invs., Inc.*, 938 F.2d at 875-76. Therefore, the Court will not dismiss the fraudulent inducement claim at this stage.

### 2.      **Negligent Appraisal** (Count II)

Market moves to dismiss TCF's statutory negligent appraisal claim on the ground that the contract defines FAVs to be outside the scope of the statute.  Minnesota law provides that "no person may:  .  .  .  fail or refuse without good cause to exercise reasonable diligence in developing an appraisal, preparing an appraisal report, or communicating an appraisal . . . engage in negligence or incompetence in developing an appraisal, in preparing an appraisal report, or in communicating an appraisal . . . [or] violate standards of professional practice."  Minn. Stat. § 82B.20, subds.  (6), (7), (13); *see also id.* subd 2(2).  Under the statute, "person" means "a natural person, firm,

institution, partnership, corporation, or association." Minn. Stat. § 82B.021, subd. 20. An "appraisal" is "an analysis, opinion, or conclusion relating to the nature, quality, value, or utility of named interests in, or aspects of, identified real estate for purposes of preparing an appraisal report." *Id.*, subd. 6. An "appraisal report" is defined as "an oral or written communication of an appraisal for compensation that is not a contingent fee . . . given or signed by a licensed real estate appraiser." *Id.*, subd. 7. A private right of action is available for violations of these provisions. Minn. Stat. § 82B.24.

As to Market's argument that the complaint fails to state a statutory negligent appraisal claim because the contract places FAVs outside the scope of the statute, it may be enough to note the unremarkable proposition that private parties cannot contract their way out of applicable laws. *See Schmidt v. Apple Valley Health Care Ctr., Inc.*, 460 N.W.2d 349, 353 (Minn. Ct. App. 1990). The statute discussed above imposes certain standards on all "persons," and TCF's complaint plausibly alleges that Market engaged in statutorily prohibited conduct. To the extent Market argues that the contract places it outside the reach of Minnesota law, it is plainly incorrect.

Moreover, the Court finds it premature to dismiss the negligent appraisal claim because it is not clear at this stage whether the FAVs amount to "appraisals" within the meaning of the statute. The term "appraisal" embraces "analysis, opinion, or conclusion relating to the nature, quality, value, or utility of named interests in . . . real estate." Minn. Stat. § 82B.021, subd. 6. Were that the only relevant statutory language, dismissal for failure to state a claim would be plainly inappropriate because regardless of how the contract defines "appraisal," the FAVs arguably amount to "analysis, opinion, or

conclusion" relating to the "nature, quality, value or utility" of real estate interests.  The statute goes on, however, to specify that, in order to qualify as an "appraisal," the analysis or opinion must be "for purposes of preparing an appraisal report."  *Id.*  And only communications given or signed by a licensed real estate appraiser qualify as appraisal reports.  The FAVs thus may or may not be "appraisals" within the meaning of the statute because it is not clear which, if any, were given or signed by a licensed real estate appraiser.  (*See, e.g.*, Agmt. § 4(A)(3) (providing that the agent conducting the inspection "may be an appraiser but is usually a real estate agent").)   Discovery is therefore necessary to determine which (if any) of the allegedly offending FAVs were performed by a licensed real estate appraiser, and thus potentially qualify as "appraisals" under the statute.  Market's motion to dismiss the negligent appraisal claim will therefore be denied.

### 3.     **Gross negligence** (Count III)[5]

Market moves to dismiss TCF's gross negligence claim on the ground that it violates the independent duty rule.  Again, under Minnesota law, a company is generally not liable in tort for breach of contractual duties.  *C-N-P Nw., Ltd. V. Sonitrol Corp.*, No. 06-2516, 2008 WL 251816, at *8 (D. Minn. Jan. 29, 2008); (*see also* Part II.B, *supra*).  TCF alleges that the inflated values in Market's FAVs resulted from gross negligence, malfeasance, or willful misconduct.  While the Agreement limits Market's

---

[5] The Complaint identifies this count as a second "Count II."

liability, it does not – and could not – preclude liability for gross negligence.[6]  *See ADT Sec. Servs., Inc. v. Swenson*, 276 F.R.D. 278, 304 n.16 (D. Minn. 2011) (observing that a party may not contractually exculpate itself from claims of gross negligence).

But this rule does not mean, as TCF argues, that gross negligence can occur only "outside" the contract and thus that its claim is necessarily extra-contractual.  The question is whether Market had a duty grounding a potential tort claim apart from enforcement of the contract.  *See Jones v. W. Union Fin. Servs., Inc.*, 513 F. Supp. 2d 1098, 1100-01 (D. Minn. 2007).  The gross negligence alleged in the complaint resulted from Market's purported failure to perform the FAVs in the manner described in the contract.  (Compl. ¶ 50.)  Unlike TCF's statutory negligent appraisal claim, then, Market had no duty to perform the FAVs described in the contract outside of its contractual obligation.  Therefore, the gross negligence claim is merely a breach-of-contract claim masquerading as a tort claim, and the Court will dismiss it because a party is not liable in tort for breach of contractual duties.  *See C-N-P Nw., Ltd.*, 2008 WL 251816, at *8.

### 4.    **Fraud** (Count IV)

Market moves to dismiss TCF's fraud claim for failure to state a claim and for lack of particularity.  The elements of fraud are: "(1) a false representation of a past or present material fact which was susceptible of knowledge, (2) the defendant knew the

---

[6] "Neither the field agent or appraiser conducting the inspection nor [Market] shall be held liable for any damages resulting from estimating market values of the subject properties unless it can be shown that gross negligence, malfeasance or willful misconduct led to the incorrect estimate."  (Agmt. ¶ 16.)

representation was false or made it without knowing whether it was true or false, (3) an intention to induce plaintiff to act in reliance on the misrepresentation, (4) the representation caused the plaintiff to act in reliance thereon, and (5) the plaintiff suffered pecuniary damage as a result of the reliance." *Moua*, 810 F. Supp. 2d at 890 (citing *Hoyt Props. Inc. v. Prod. Res. Grp., LLC*, 736 N.W.2d 313, 318 (Minn. 2007)). Moreover, plaintiffs must plead fraud with particularity. Fed. R. Civ. P. 9(b). "In other words, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." *See BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense . . . conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Comm. Prop. Invs., Inc. v. Quality Inns Int'l., Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).

TCF alleges that Market's assurances about its practices – made in response to TCF's August 2002 letter inquiring about a significant difference in one particular FAV and a full appraisal – amounted to a knowingly false representation made with the intention to induce TCF to continue to order FAVs, and which did in fact have that effect. (Compl. ¶¶ 54-62.) Market argues that the fraud claim fails for two reasons: (1) it is an opinion, rather than a fact, and so cannot form the basis for fraud, and (2) it is not plead with the particularity that Rule 9 requires.

The Court will not dismiss TCF's fraud claim. It is true that mere opinion cannot be the basis for fraud because an opinion is not a representation of past or present material **fact**. *See, e.g.*, *In re Meahyen*, 422 B.R. 192, 201 (Bankr. D. Minn. 2010);

*Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000).   But even assuming that the FAVs amounted to nothing more than opinion, as pleaded in the complaint the fraud claim is not principally rooted in the allegedly erroneous FAVs. Rather, that claim alleges Market sent a letter "assuring" TCF that Market "was not engaged in practices that would produce a 'significant difference between the FAV value and the appraisal.'"   (Compl. ¶ 56.)   The FAVs might have been opinion; assurances about Market's business practices were not.   Rather, such an assurance was a representation of past or then-present material fact susceptible of knowledge.   *See Moua*, 810 F. Supp. 2d at 895.   The opinion / fact distinction therefore does not provide a basis on which to dismiss the fraud claim.

Moreover, the Court finds that TCF's fraud claim is alleged with sufficient particularity to satisfy Rule 9.   TCF identified the language of the letter that TCF's executive vice-president sent in August 2002 and the substance of Market's response. This information is enough to give Market fair notice and an opportunity to respond – the central purpose of the rule.   *See Comm. Prop. Invs., Inc.*, 61 F.3d at 644.

### 5.   Consumer Fraud and Deceptive Trade Practices Claims
(Counts V, VI)

Market moves to dismiss the consumer fraud and deceptive trade practices claims on the ground that the complaint fails to allege a public benefit.   "Private citizens may pursue private claims under the MDTPA [Minnesota Deceptive Trade Practices Act] or MCFA [Minnesota Consumer Fraud Act] only through Minnesota's Private Attorney General Statute, which limits such actions to those that benefit the public."   *Olivares v.*

*PNC Bank*, Civ. No. 11-1626, 2011 WL 4860167, at *8 (D. Minn. Oct. 13, 2011) (citing *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000)).  "Claims benefit the public when misleading statements or deceptive trade practices are directed to the 'public at large.'" *Id.* (quoting *Collins v. Minn. School of Bus., Inc.*, 655 N.W.2d 320, 330 (Minn. 2003)).

TCF argues that the complaint **does** allege a public benefit because Market had other clients to whom it likely made similar representations, and that Market's practices have consequences for dozens of mortgage holders whose homes went into foreclosure. Though TCF's argument is creative, the Court will not construe the complaint this liberally.  Courts have dismissed claims for failure to allege a public benefit even where the complaint **did** expressly allege – as TCF now argues – that the defendant participated in the same conduct with other consumers.  *See Olivares*, 2011 WL 4860167, at *8 (dismissing claim where an ostensible form letter may have been sent to other consumers).  Because the complaint fails to allege a public benefit, the Court will dismiss the consumer fraud and deceptive trade practices claims without prejudice to TCF's ability to remedy this error in future filings, though the Court is skeptical that a public benefit underlies these claims.[7]  *See id.* (dismissing MDTPA and MCFA claims with prejudice because the complaint does not adequately allege a public benefit).

---

[7] The deceptive trade practices claim is also fatally insufficient because it seeks damages, while the MDTPA plainly permits only injunctive relief.  *See* Minn. Stat. § 325D.45, subd. 1; *Cannon Tech., Inc. v. Sensus Metering Sys., Inc.*, 734 F. Supp. 2d 753, 768 (D. Minn. 2010) (dismissing DTPA claim because "monetary damages are not available").

### 6.      **Interference with Business Relations** (Count VII)

Market moves to dismiss TCF's tortious interference claim for failure to allege certain required elements.  "[T]o prevail on a claim of tortious interference with contract, a plaintiff must establish five elements: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the intentional procurement of a breach of the contract; (4) without justification; and (5) damages."  *SICK, Inc., v. Motion Control Corp.*, No. 01-1496, 2002 WL 832609, at *4 (D. Minn. Apr. 30, 2002).

The substance of the six paragraphs comprising TCF's tortious interference claim is simply this: Market "interfered" with TCF's actual and prospective business with its borrowers, Market is not a party to TCF's business relationship with its borrowers, such interference was intentional, improper and without justification, and TCF is entitled to damages as a result.  Even construing the complaint to allege the existence of residential mortgage contracts between TCF and its borrowers (it mentions borrowers, but no specific contract) of which Market was aware (it alleges that Market knew TCF would use Market's work in underwriting loans), the complaint nonetheless does not allege Market's intentional procurement of a breach of those contracts.  *See id.*  The complaint therefore fails to state a claim for interference with business relations, and that claim will be dismissed.

### 7.      **Breach of the Covenant of Good Faith** (Count VIII)

Market moves to dismiss TCF's breach of the covenant of good faith claim on the ground that no such cause of action exists absent a breach of contract claim.   Market is

correct.  Minnesota law does not recognize a cause of action for breach of the covenant of good faith and fair dealing apart from the underlying breach of contract claim. *Medtronic, Inc. v. ConvaCare, Inc.*, 17 F.3d 252, 256 (8th Cir. 1994).  As noted above, TCF has not pled breach of contract.  The federal rules, of course, permit pleading in the alternative.  Fed. R. Civ. P. 8(a)(3).  Were the Court to construe TCF's tort claims as functional breach of contract claims – as TCF now somewhat implausibly appears to argue that it anticipated – this claim might have survived.  However, because the Court will read TCF's complaint as it is presented – that is, will not read the complaint as necessarily alleging a breach of contract – the breach of the covenant of good faith and fair dealing claim will be dismissed.

### D.     Successor Liability

TCF names several other entities apart from Market Intelligence as defendants. Market argues that the complaint must be dismissed as against the other defendants because TCF does not allege that any of the other defendants agreed to assume Market's liabilities, or that other circumstances giving rise to successor liability under Minnesota law are present.  Transferee liability exists in Minnesota "only to the extent provided in the contract or agreement between the transferee and the transferor or to the extent provided by this chapter or other statutes of this state."  Minn. Stat. § 302A.661, subd. 4; *see also In re Milk Prods. Antitrust Litig*, 84 F. Supp. 2d 1016, 1025 (D. Minn. 1997). Courts recognize four exceptions to this rule: (1) where the successor corporation expressly or impliedly agreed to assume such liabilities, (2) when the acquisition amounts

to a merger of the corporations, (3) when the successor corporation is merely a continuation of the purchased corporation, (4) when the purpose of the transaction is to fraudulently escape liability.  *In re Milk Prods. Antitrust Litig*, 84 F. Supp. at 1025.

TCF argues that it simply pleaded successor liability because it was concerned that Market was no longer a viable entity, and that some other entity had assumed its liabilities.  Specifically, TCF argues that, among other facts, defendant Fidelity National Financial, Inc. bought Market in 2004; that Market merged into defendant Fidelity National Information Solutions, Inc., another subsidiary of Fidelity National Financial, Inc.; and that Market's services were transferred to LSI Appraisal, LLC, another subsidiary.  TCF named these entities as defendants because it was uncertain at the time of filing who had become the real party in interest.

The Court declines to dismiss the other named defendants at this stage of the litigation.  The only allegation in the complaint relating to successor liability appears in its description of the parties.[8]  The complaint does not specifically allege that any of the other defendants agreed to assume Market's liabilities, or that any of the exceptions to the

---

[8] That allegation states:

On information and belief, Defendant Fidelity National Information Services, Inc., or Defendant LSI Appraisal, LLC, or Defendant Lender Processing Services, Inc., is the successor in interest to Defendant Market Intelligence, Inc., with respect to the Agreement that is this action's subject matter.  Defendant Fidelity National Information Services, Inc. or Defendant LI Appraisal, LC, or Defendant Lender Processing Services, Inc., is therefore the real party in interest with respect to TCF's claims.

(Compl. ¶ 9.)

statutory rule regarding transferee liability apply.   Nonetheless, the Court will allow discovery to proceed as to which entity or entities is the real party in interest in this action.

## CONCLUSION

For the reasons set forth above, the Court will grant Market's motion as to the gross negligence, consumer fraud and deceptive trade practices, interference with business relations, and breach of the covenant of good faith and fair dealing claims.   It will deny the motion in all other respects.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion to Dismiss [Docket No. 10] is **GRANTED in part** and **DENIED in part**, as follows:

a.      The motion is **GRANTED** as to counts III (labeled as "count II") (gross negligence), V (consumer fraud), VI (deceptive trade practice), VII (interference with business relations), and VIII (breach of covenant of good faith and fair dealing).   Those claims are hereby **DISMISSED without prejudice**.

b.      The motion is **DENIED** in all other respects.

DATED:  July 25, 2012                  ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                    United States District Judge

- 23 -