UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| TCF NATIONAL BANK, | Civil No. 11-2717 (JRT/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS COUNTS III, IV AND VI** |
| MARKET INTELLIGENCE, INC., FIDELITY NATIONAL INFORMATION SERVICES, INC., LSI APPRAISAL, LLC, and LENDER PROCESSING SERVICES, INC., | |
| Defendants. | |

Brian Melendez, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402-3901, for plaintiff.

Donald G. Heeman, **FELHABER LARSON FENLON & VOGT, PA**, 220 South Sixth Street, Suite 2200, Minneapolis, MN 55402-4504; and David T. Case, **K&L GATES LLP**, 1601 K Street Northwest, Washington, DC 20006-1600, for defendants.

This action arises out of Defendant Market Intelligence, Inc.'s ("Market's") performance of certain real estate evaluations for Plaintiff TCF National Bank ("TCF") pursuant to a contract between the parties. The other Defendants are allegedly potential successors in liability to Market. Defendants bring a motion to dismiss TCF's breach of contract, covenant of good faith and fair dealing, and Minnesota Consumer Fraud Act ("CFA") claims. For the reasons stated below, the Court will deny Defendants' motion.

## BACKGROUND

**I.  FACTUAL BACKGROUND**[1]

In June 2002, TCF and Market entered into a contract (the "Agreement") concerning evaluations and appraisals of residential real properties for the purpose of determining estimated market value.  The "evaluation services" Market was to provide included "Field Asset Verifications" or "FAVs."  TCF claims that Market's FAVs negligently inflated property values and induced TCF to enter into loans into which it would not have entered but for the inflated values.

The FAV is a residential real property evaluation comprised of (1) data, for example, a previous appraisal or a prior sales price, and (2) a "drive-by" exterior inspection of the property by a licensed real estate agent.  The agent may be an appraiser but is usually a real estate agent.  In short, the Agreement states that FAVs were estimates or opinions of value – not appraisals – and were not required to be performed by appraisers.

From 2002 through 2005, Market performed FAVs in connection with 2,989 residential mortgage loans that TCF originated.  The loans totaled approximately $300 million.  On August 29, 2002, TCF executive vice-president Tim Meyer wrote to Market's Ted Mara inquiring about a "significant difference" between one particular FAV value and the appraisal value.  Market responded by assuring TCF that it was not engaged in practices that would produce a significant difference in other cases.

---

[1] This section largely repeats the factual allegations described in the Court's original order.  (Order, July 25, 2012, Docket No. 24.)

Pursuant to the Agreement's terms, TCF terminated the Agreement effective June 11, 2005.  TCF later discovered that many FAVs had grossly overestimated the value of properties whose mortgages were in default or foreclosure.  TCF claims that these inflated values led it to enter loans it would not have otherwise entered, and that it suffered financial losses when it foreclosed on, or charged off, mortgages for which Market had performed FAVs.

## II.     PROCEDURAL BACKGROUND

Defendants previously brought another motion to dismiss, which the Court granted in part and denied in part.  *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, Civ. No. 11-2717, 2012 WL 3031220, at *10 (D. Minn. July 25, 2012).  On August 22, 2012, TCF filed an amended complaint that, among other claims, asserted a new breach of contract claim and re-asserted previously-dismissed claims for breach of the covenant of good faith and fair dealing and violations of the CFA.  (Am. Compl. ¶¶ 33-80, Aug. 22, 2012, Docket No. 28.)  Defendants move to dismiss these three claims.

## ANALYSIS

### I.     BREACH OF CONTRACT

#### A.     Failure to Plead Fraudulent Concealment

The Court must first decide if the breach of contract claim is properly pled. Defendants argue that the claim is barred because TCF did not plead the elements of fraudulent concealment necessary for the claim to survive.

The six-year statute of limitations on the claim for breach of contract begins running when a contract is breached. *See Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 956 (D. Minn. 2000) (citing *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 803 (Minn. 1989)), *aff'd*, 286 F.3d 1051 (8th Cir. 2002). TCF's amended complaint alleges that TCF terminated its agreement with Market on February 11, 2005, with the termination effective June 11, 2005. (Am. Compl. ¶ 20.) The parties agree that, because all services were performed more than six years before the filing of the amended complaint, the breach of contract claim would be barred if the statute of limitations was not tolled. TCF claims that the statute of limitations was tolled because Market fraudulently concealed the facts necessary for TCF to discover the breach of contract claim. Defendants maintain, however, that TCF cannot raise the issue of fraudulent concealment because it was not pled in the complaint.

The Court finds, first, that TCF has properly raised the elements of fraudulent concealment in its complaint. To show fraudulent concealment, a plaintiff must establish "1) that the Defendant engaged in a course of conduct to conceal evidence of the Defendant's alleged wrongdoing; and 2) that the Plaintiff failed to discover the facts giving rise to [its] claim despite [its] exercise of due diligence." *Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177, 1184 (D. Minn. 1999); *see also Haberle v. Buchwald*, 480 N.W.2d 351, 357 (Minn. Ct. App. 1992) ("To establish fraudulent concealment, a plaintiff must prove there was an affirmative act or statement which concealed a potential cause of action, that the statement was known to be false or was made in reckless disregard of its truth or falsity, and that the concealment could not have been discovered

by reasonable diligence."). When fraudulently concealed facts "reasonably should have been discovered is . . . a question of fact." *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985).

The Court finds that TCF has alleged facts sufficient to show fraudulent concealment. First, TCF alleged that Market engaged in a course of conduct to conceal evidence of its alleged wrongdoing. Specifically, TCF alleged that the inflated values in the FAVs resulted from gross negligence, malfeasance, or willful misconduct by Market. (Am. Compl. ¶¶ 50-51.) Despite these wrongful acts, TCF alleged that Market falsely assured TCF that it was not engaged in practices that would produce a "significant difference between the FAV value and the appraisal." (*See id.* ¶ 65.) These allegations are sufficient to claim that Market engaged in a course of conduct to conceal evidence of its wrongdoing.

Second, TCF alleged, in essence, that it failed to discover the facts giving rise to its claim despite its exercise of due diligence. Although it did not specifically plead that it exercised due diligence, TCF alleged that Market "intended to induce TCF's reliance upon [Market's] assurances so that TCF would keep ordering Field Asset Valuations," that TCF justifiably believed and relied on Market's false assurances, and that these assurances damaged TCF. (Am. Compl. ¶¶ 66-70.)[2] As will be further described below, parties can be deemed to exercise due diligence even without thoroughly investigating the facts if they are given certain reassurances meant to mislead and fool them and thus cause

---

[2] These allegations in the fraud claim are incorporated into the breach of contract claim. (Am. Compl. ¶ 49.)

them not to discover particular facts. *See Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 877-78 (8th Cir. 2000) (citing *Hines v. A.O. Smith Harvestore Prods., Inc.*, 880 F.2d 995, 998-99 (8th Cir. 1989)). By alleging that Market intentionally induced TCF to rely on false assurances, TCF's adequately alleged that it exercised due diligence. Even assuming that TCF did not properly plead that it exercised due diligence, however, TCF may not have been required to do so. *See, e.g.*, *In re Bulk Popcorn Antitrust Litig.*, No. 3-89-0710, 1990 WL 123753, *5 (D. Minn. June 19, 1990) ("'Due diligence' need not be pleaded; rather, it is an affirmative defense.").[3] Accordingly, the Court finds that TCF satisfactorily alleged the elements of fraudulent concealment.

### B. Due Diligence

Defendants also argue that the Court should dismiss TCF's breach of contract claim because TCF did not exercise due diligence to discover this claim. Specifically, Defendants argue that TCF could have discovered Market's alleged failure to perform the FAVs as promised through, for example, conducting appraisals on its own, independently checking the condition of the properties at issue, or looking at comparable sales to determine the properties' value.

Under the doctrine of fraudulent concealment, a statute is tolled "until discovery or reasonable opportunity for discovery of the [fact] by the exercise of ordinary

---

[3] There is a split in the case law regarding whether plaintiffs must plead that they exercised due diligence to toll the statute of limitations, and there is no controlling precedent in the Eighth Circuit on this issue. *Block v. Toyota Motor Corp.*, 795 F. Supp. 2d 880, 888-89 (D. Minn. 2011).

diligence." *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975). "The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence." *Id.* "[N]ormally in a statute of limitations context fraudulent concealment and a plaintiff's due diligence are questions of fact unsuited for summary judgment" or a motion to dismiss. *See Hines*, 880 F.2d at 999.

For three reasons, the Court finds that it is premature to determine if TCF exercised due diligence. First, without more evidence, it is unclear how easily or if TCF could have determined the inaccuracies in Market's FAVs. Second, TCF's complaint centers around Market's practices in **conducting** the FAVs, not simply the results of Market's practices, and it may have been particularly difficult for TCF to independently discover the practices that Market used. Third, when TCF complained in 2002 about the inaccuracies in one FAV, Market may have "lulled" TCF into believing that any problems with FAVs were unique and, if present, would be fixed. *See Marvin Lumber & Cedar Co.*, 223 F.3d at 878 (citing *Hines*, 880 F.2d at 998-99); *see also Anderson v. Dairy Farmers of Am., Inc.*, Civ. No. 08-4726, 2010 WL 1286181, at *10 (D. Minn. Mar. 29, 2010) (allowing claim of fraudulent concealment to survive where Plaintiff alleged that Defendant may have intended to conceal relevant information). The Eighth Circuit has held that, where a party misleads another into believing that a problem will be fixed, there may be a claim for fraudulent concealment. *Marvin Lumber & Cedar Co.*,

223 F.3d at 877. Because it appears at this stage that TCF may have a claim for fraudulent concealment, the Court will not dismiss the breach of contract claim.[4]

## II. MINNESOTA CONSUMER FRAUD ACT

### A. Statute of Limitations

The Court must next address Defendants' motion to dismiss TCF's CFA claim. In its previous order, this Court held that it would not dismiss this claim based on the statute of limitations. Specifically, the Court held TCF's fraud claims – including the CFA claim – accrued when TCF discovered "the facts constituting the fraud." *See* Minn. Stat. § 541.05, subd. 1(6). The Court held that it was not clear when these facts became apparent to TCF, and thus the Court did not dismiss the CFA claim on the basis of the statute of limitations. Defendants ask the Court to revisit this ruling, arguing that the CFA claim did not accrue when TCF discovered the facts constituting the fraud. Instead, Defendants maintain that the CFA claim accrued upon the violation of the statute.

The correct outcome on this issue depends on which subsection in Minn. Stat. § 541.05 applies to CFA claims. Section 541.05 identifies the following types of cases:

---

[4] Defendants also moved to dismiss TCF's claim for a breach of the covenant of good faith and fair dealing. However, Defendants concede at this stage that, if the breach of contract claim survives, the breach of the covenant of good faith and fair dealing claim should also survive. Because the Court will not dismiss the breach of contract claim, the Court also declines to dismiss the claim for a breach of the covenant of good faith and fair dealing.

>   (2) [actions] upon a liability created by statute . . . .[5]
>
>   (6) [actions] for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud[.]

It is unclear from the face of the statute which of these subsections applies to the CFA. There is a split in the case law on whether subsection (2) or (6) applies to actions under the CFA. *Compare Drobnak v. Andersen Corp.*, Civ. No. 07-2249, 2008 WL 80632, at *4 (D. Minn. Jan. 8, 2008) (holding that the statute of limitations for fraud-based claims, including claims based on Minnesota statutes, begins to run when a plaintiff knew or should have known of the fraud), *with Buetow v. A.L.S. Enterp., Inc.*, 259 F.R.D. 187, 192 (D. Minn. 2009) (subdivision 2 applies).

The Court finds that it is more appropriate to apply subsection (6) to claims arising under the CFA. The CFA largely seeks to broaden, not limit, the availability of relief as compared to claims of common law fraud. *See, e.g.*, *Wiegand v. Walser Auto. Grps., Inc.*, 683 N.W.2d 807, 812 (Minn. 2004) ("[T]he Consumer Fraud Act reflects the legislature's intent to make it easier to sue for consumer fraud than it had been to sue for fraud at common law." (internal quotation marks omitted)). Because of the ambiguity in § 541.05 and the legislature's intent to broaden the relief available under common law fraud, the Court deems it inappropriate to create a shorter statute of limitations for the CFA than is available under common law fraud. Accordingly, the Court will not dismiss the CFA claim on the grounds of the statute of limitations.

---

[5] If this subsection applies, the statute of limitations would begin to run upon the violation of the statute. *Veldhuizen v. A.O. Smith Corp.*, 839 F. Supp. 669, 676 (D. Minn. 1993).

B.   **Public Benefit**

The Court must finally decide if TCF's CFA claim alleges a public benefit. In this Court's previous order, it dismissed TCF's CFA claim without prejudice because the complaint failed to allege a public benefit. However, the Court allowed TCF to amend its complaint to attempt to allege such a benefit. Defendants now argue that TCF's amended claim does not allege a public benefit.

The CFA provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided [herein].

Minn. Stat. § 325F.69, subd. 1. The CFA does not contain a private cause of action. *Wehner v. Linvatech Corp.*, No. 06-CV-1709, 2008 WL 495525, at *3 (D. Minn. Feb. 20, 2008). Under Minnesota's Private Attorney General Statute ("Private AG Statute"), however, "any person injured by a violation" of the CFA may file suit and recover damages as well as costs and attorneys' fees. Minn. Stat. § 8.31, subd. 3a. By encouraging defrauded consumers to file suit, the Private AG Statute "advances the legislature's intent to prevent fraudulent representations and deceptive practices with regard to consumer products." *Ly v. Nystrom*, 615 N.W.2d 302, 311 (Minn. 2000). "[T]he CFA is remedial and should be liberally construed in favor of protecting consumers." *Id.* at 308.

To properly plead a CFA claim, TCF must have adequately alleged a public benefit. "Since the Private AG Statute grants private citizens the right to act as a

'private' attorney general, the role and duties of the attorney general with respect to enforcing the fraudulent business practices laws must define the limits of the private claimant under the statute." *Id.* at 313. The attorney general is not responsible for protecting "private or individual interests **independent** of a public purpose." *Id.* (emphasis added). Accordingly, "the Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public." *Id.* at 314.

The Court finds that TCF's amended complaint alleges a public benefit for two primary reasons. First, TCF has alleged that Market's alleged misrepresentations may have significantly affected the public. *See In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1078-79 (D. Minn. 2010). According to TCF, from 2002 through 2005, TCF ordered and Market performed FAVs in connection with 2,989 residential mortgage loans that TCF originated. As of August 2008, TCF calculated that at least thirty-two such mortgages had gone into default, and it is possible that more have done so or will do so. TCF alleges that Market's fraud had ramifications not only for TCF, but also for the borrowers with whom the inflated values in Market's FAVs induced TCF to enter into loans that it would not have entered into if the values had been realistic rather than inflated. Given the significant number of loans involved and the impact that TCF's entry into inappropriate loans may have had and may continue to have on its customers and the broader public, the Court finds that TCF has pled a sufficient public benefit to survive a motion to dismiss.

Second, TCF has alleged that Market may have made similar representations to clients other than TCF. Dismissal is inappropriate at this stage where "the relationship

between the events of this case and [Market]'s broader practices" is unclear. *See ADT Sec. Servs., Inc., v. Swenson*, 687 F. Supp. 2d 884, 892 n.4 (D. Minn. 2009). Market may have made similar representations to other companies, possibly creating a significant impact on these companies, their customers, and even more individuals in the broader community.

Because of the extensive impact that Market's alleged actions may have had on the public, the Court finds that TCF has alleged a public benefit. Allowing this claim to survive is consistent with the Minnesota Supreme Court's directive that the CFA "should be liberally construed in favor of protecting consumers." *See Ly*, 615 N.W.2d at 308. Furthermore, TCF has alleged a public benefit even though it seeks only monetary relief. The plain language of the Private AG Statute allows for money damages, and awarding this type of relief to a private plaintiff in a case such as this one may benefit the public through providing a deterrent effect. *See Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1017 (D. Minn. 2012). Accordingly, because TCF has properly alleged a public benefit, the Court will not dismiss TCF's CFA claim.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Counts III (breach of contract), IV (breach of covenant of good faith and fair dealing) and VI (Consumer Fraud) of Amended Complaint [Docket No. 29] is **DENIED**.

DATED: January 3, 2013  
at Minneapolis, Minnesota.

s/ *John R. Tunheim*  
JOHN R. TUNHEIM  
United States District Judge